UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RALPH SAUNDERS** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-7990-LMA-SS** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION** | |

## REPORT AND RECOMMENDATION

The plaintiff, Ralph Saunders ("Saunders"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423.  Rec. doc. 1.

## PROCEDURAL HISTORY

On December 2, 2004, Saunders submitted an application for benefits alleging that he became disabled on July 20, 2004.  R. 47-51.  He reported an injury to his back with chronic hip pain.  R. 54.  On January 6, 2005, his application was denied.  R. 33-36.  On December 7, 2005, a hearing was held before the ALJ.  R. 261.  On January 26, 2006, the ALJ issued an unfavorable decision.  R. 15-25.  On September 6, 2006, the Appeals Council denied Saunders' request for review.  R. 5-7.  On October 13, 2006, he filed a complaint for review with this Court.  Rec. doc. 1.  The parties submitted cross-motions for summary judgment.  Rec. doc. 9 and 10.  Saunders was represented by counsel throughout these proceedings.

## STATEMENT OF ISSUES ON APPEAL

Saunders' filings raise the following issues:

1. Whether the ALJ erred in failing to consider all relevant evidence?

2. Whether there was substantial evidence to support the ALJ's determination of Saunders' RFC or whether new and material evidence established that his impairments restricted him to sedentary work?

3. Whether there was substantial evidence to support the ALJ's finding on credibility?

4. Whether the claim was properly before the ALJ?

## THE ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1. The claimant meets the non-disability requirements for a period of disability and disability insurance benefits set forth in section 216(i) of the Social Security Act through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since July 20, 2004 (20 CFR § 404.1520(b)).

3. The claimant has the following severe impairment: disorders of the back (20 CFR § 404.1520(d)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1, Regulations No. 4 (20 CFR § 404.1520(d)).

5. The claimant has the residual functional capacity for lifting and/or carrying 10 pounds frequently and 20 pounds occasionally; sitting 6 hours in an 8-hour work day; and standing and/or walking 6 hours in an 8-hour work day.

6. The claimant's statements concerning the intensity, duration and limiting effects of his symptoms are not entirely credible.

7. The claimant is unable to perform any past relevant work (20 CFR § 404.1565).

8. The claimant was born on February 27, 1955 and was 49 years old on the alleged disability onset date, which is defined as a younger individual (20 CFR § 404.1563).

    9.       The claimant has a General Equivalency Diploma and is able to communicate in English (20 CFR § 404.1564).

    10.     Transferability of job skills is not material to the determination of disability due to the claimant's age (20 CFR § 404.1568).

    11.     Considering the claimant's age, education, work experience, residual functional capacity, there are unskilled jobs that exist in significant numbers in the state and national economies that the claimant can perform (20 CFR §§ 404.1560(c) and 404.1566). These jobs are unskilled and require no prior work skills or experience according to the vocational expert.

    12.     The claimant has not been under a "disability," as defined in the Social Security Act, from July 20, 2004 through the date of this decision (20 CFR § 404.1520(g)).

R. 20-24.

## ANALYSIS

a.    **Standard of Review.**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Newton, 209 F.3d at 452. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Id.; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial

evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, the plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (1997). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Newton v. Apfel, 209 F.3d at 453; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[1] The five-step inquiry

---

[1] The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).
Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).
Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

terminates if the Commissioner finds at any step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Id. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant." Id.; accord Selders, 914 F.2d at 618.

The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." Id.

b.  **Testimony at the Hearing.**

Saunders was 50 years old at the time of the hearing. R. 264. He was married with two daughters. R. 265. He completed the ninth grade and earned a GED at age 28. R. 265. He had a driver's license. R. 265. After three years in the Marine Corps, he was honorably discharged in January 1978. R. 265.

---

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

Saunders worked at the VA Medical Center ("VA") as a housekeeper from 1989 to 1991. R. 267-69.  In 1991, he was promoted to the engineering department and worked as an air-conditioning helper until 1998.  R. 268-69.  In 1998, he was promoted to a painter.  R. 267-269.  He worked as a painter until he injured his back in 2004 trying to move a desk.  R. 268-69.  For about two or three months in the summer of 2005, he worked as a night engineer at a hotel.  R. 266.  He monitored gauges on the boilers and chillers and responded to calls from guests with problems, for example a malfunctioning room air conditioner.  R. 266.  He left the hotel job because of hurricane Katrina and a painful episode with his back that occurred when he was cutting his grass and which required treatment at an emergency room.  R. 267.

Saunders' back hurt when he walked and both of his legs were numb.  R. 270.  At times he experienced excruciating pain in his back.  R. 270.  If he pushed a lawnmower, his back went out. R. 274.  It hurt when he carried a small weight, 15 to 20 pounds, at a grocery store.  R. 274.  He could not bowl or fish because of the pain.  R. 275.  He had problems sleeping.  R. 275.  He could drive a car, but he had to stop when his lower back began to hurt.  R. 276.

Saunders was given an injection in the back and physical therapy which provided some relief.  When he returned to basic household work, his back hurt.  R. 271.  His doctor discussed surgery but Saunders said the doctor would not do the surgery because of worker's compensation. R. 271.  Since Katrina he was trying to go to another orthopedic doctor.  R. 271-72.  He took medication.  R. 271.

Saunders suffered from depression throughout his employment at the VA Medical Center. R. 272.  He experienced problems with his job, including communication difficulties with his managers.  R. 272.  These problems brought on depression.  R. 272.  He described a supervisor who

6

denied him leave when his wife had bypass surgery. R. 272-73. His family told him not to talk about his problems at the VA Medical Center. R. 273-74. Dr. Boutte treated him for his depression. R. 272-74.

The vocational expert described the painting job as medium skill level, the air conditioner helper position as medium to semiskilled, and the housekeeping job as unskilled. R. 277. None of Saunders' skills transferred to light or sedentary work and the expert did not believe he could not perform his past work. R. 277. However, the expert testified there were positions that could be performed by a 50-year-old claimant with a GED degree who was able to perform light duty work subject to the following limitations: (a) lift and carry 20 pounds occasionally, ten pounds more frequently; and (b) walk or sit up to six hours in an eight-hour day. R. 277-78.

c.      **Medical Records.**

On April 21, 2003, Saunders was seen by Brian J. Naccari, M.D., for complaints of pain in his hip. The diagnosis was bursitis. R. 156.

On August 26, 2003 and September 23, 2003, Saunders was seen by John M. Boutte, Ph.D., a licensed clinical psychologist. He reported constant stress and harassment from his female supervisor at the VA. R. 136-37. Dr. Boutte diagnosed him with major depression of moderate severity and generalized anxiety disorder. Cognitive-behavioral psychotherapy was recommended. R. 136-37. On October 21, 2003, Saunders complained to Dr. Boutte of continued harassment at work. R. 134-35. On November 18, 2003, he reported that he felt much better after taking a week of leave from work. R. 132-33. On December 23, 2003, he reported to Dr. Boutte that his female supervisor wanted to destroy him. R. 130-31.

On February 18 and 25, 2004, Saunders returned to Dr. Nacarri with complaints of anxiety

and depression. R. 154-55.

On March 3, 2004, Saunders reported to Dr. Boutte that things were worse and he almost lost control of himself at work. He was placed on medical stress leave for five days (March 8-15, 2004). R. 128-29. On March 12, 2004, he reported to Dr. Boutte that he felt much better. R. 126-27. On March 30, 2004, he reported to Dr. Boutte that when he returned to work he was charged as AWOL. His supervisor told him he was abusing his sick leave. He hoped the stress would be relieved with the transfer of the housekeeping supervisor to another department. The diagnosis was major depression without suicidal ideation and generalized anxiety disorder. R. 124-25.

On July 20, 2004, Saunders was seen at the emergency room at Methodist Hospital. He reported that he injured his back when he moved a desk at work. He was diagnosed with right lumbar strain. An injection was given and medication was prescribed. R. 139-42. On July 22, 2004, he was seen by Dr. Nacarri with complaints of low back and leg pain. R. 153. An August 19, 2004 x-ray of the lumbrosacral spine revealed no fracture, dislocation or other bony abnormalities. The disk spaces, facet joints and sacroiliac joints appeared normal. There was normal alignment of the lumbar vertebral bodies and no bony destruction. R. 159. He was seen by Dr. Naccari on August 20 and September 8, 2004 for the completion of paperwork required for his report of work-related stress. R. 152.

On September 21, 2004, Saunders was seen by Srilatha Shoroff, M.D., at the VA for anxiety and depression. The mental status examination revealed that he was alert, oriented, neat, clean and pleasant with normal speech and no psychosis. His concentration was grossly intact. R. 177-79 and 194-97.

On September 30, 2004 at the request of the U.S. Department of Labor, Saunders was seen

by John Lee Moss, M.D, an orthopedic specialist.  He reported pain in the low back and right thigh and numbness.  He ambulated with a cane and limped.  The lumbar spine had limited motion with pain. The straight leg test was negative.  There was a full range of motion in both hips.  There was no muscle atrophy.  R. 203-05A.  An October 8, 2004 lumbar spine MRI revealed:  a disc bulge at L3-4; a broad-based disc bulge at L4-5; and focal protrusion at L5-S1.  R. 163.  On October 15, 2004 and at the request of Dr. Moss, Saunders was given a lumbar epidural steroid injection.  R. 165-66. On October 18, 2004, he reported spasms in the right low back with tingling in the right hip. Vicodin was prescribed.  Dr. Moss estimated that maximum medical improvement would be reached in eight weeks and Saunders might require additional epidural steroid injections and physical therapy.  R. 202.

On October 14, 2004, Saunders was seen at the VA by Helena Costales, M.D. with complaints of stress, depression and anxiety.  His medication was continued and he was referred to a substance abuse clinic. R. 192-93.  On October 25, 2004, he was seen at VA by Emmett Spears, RN.  He reported drinking three 24 ounce beers per day.  R. 175-76 and 191-92.  On October 27, 2004, he was seen at VA by William Hill, an addiction therapist.  R. 184-91.  On October 29, 2004, Saunders was admitted to a VA support and engagement group for treatment.  R. 180.  On November 1, 2004, he participated in a group discussion focused on developing strategies for anger producing situations.  R. 180.

On November 8, 2004, the diagnosis by Dr. Moss was lumbar strain, lumbar disc syndrome and lumbar radiculitis on the right.  Medication was continued and physical therapy was ordered. Saunders was not allowed to return to work.  R. 201.  On December 6, 2004, Dr. Moss reported that the physical therapy report indicated improvement but further therapy was needed.  Saunders was

9

to remain off of work.  R. 200.

On January 6, 2005, Lester Barnett, Ph.D., completed a psychiatric review.  Dr. Barnett found that medically determinable impairments, depression, generalized anxiety disorder and alcohol use, were present.  The only limitation noted was a mild limitation for maintaining concentration, persistence and pace.  R. 206-19.

On January 7, 2005, Dr. Moss reported that the most recent physical therapy report indicated progress but continued physical therapy was required for another four weeks.  Saunders was kept off of work.  Dr. Moss anticipated that in another four weeks Saunders would be able to return to modified duty.  R. 236-40.  On February 14, 2005, Dr. Moss scheduled a visit after completion of the functional capacity evaluation by the physical therapist.  R. 234-35.  On March 8, 2005, Dr. Moss reported that Saunders should not work at that time.  He was to return in one month for review of the FCE.  R. 225.  The FCE determined that "[b]ased on his demonstrated ability, he is capable to return to work as a painter or similar position in a Medium PDL with the suggested restrictions listed within this report."  R. 228-33.

On April 4, 2005, Dr. Moss reported that Saunders could return to medium level activities with no prolonged repetitive trunk flexion or overhead work and occasional lifting of thirty pounds.  Sitting, standing and walking were unrestricted.  He was to continue home exercises.  R. 223-24.  On May 23, 2005, Saunders reported to Dr. Moss that he did not have pain in his legs.  He had low back pain once in a while when he performed activities that stressed his low back.  Dr. Moss discharged him to the care of a spine surgeon of his choice and reported that Saunders was able to work modified duty with the restrictions listed in the FCE.  R. 221-22.

On September 20, 2005, Saunders was seen at the Houston VA Medical Center as an

outpatient and prescribed medication. R. 243.

On February 3, 2006, Saunders was seen by William Woessner, M.D., a family practice specialist. He reported low back pain and tenderness. Medication was prescribed. He was cleared for light duty work with lifting restricted to ten pounds. R. 258. A February 16, 2006 MRI was interpreted as a combination of short pedicles with minor degenerative disc disease and facet joint hypertrophy resulting in several levels of spinal and neural foraminal stenosis at the mid to lower lumbar spine. R. 255-56. On February 24, 2006, Dr. Woessner cleared Saunders for light duty with no lifting of more than ten pounds. He was discharged into the care of a neurosurgeon. R. 253.

On April 4, 2006, Saunders was seen by Dr. Rand Voorhies, a neurosurgeon, on a referral from Dr. Woessner. Dr. Voorhies said:

> This patient seems particularly straightforward to me. I think he has a combination of axial joint pain and neurogenic claudication. He may ultimately be a candidate for a decompression and fusion, particularly given the long duration of his symptoms and the apparent failure of nonoperative measures. On the other hand, I think one more attempt to treat him nonoperatively would probably be the best course of action at this point.

R. 251-52.

On April 7, 2006, Dr. Woessner reported that Saunders was clear for light duty but he could not climb on ladders or lift more than ten pounds. R. 249. Saunders was referred to Joseph Shine, the same physical therapist that completed the March 15, 2005 FCE for Dr. Moss. On May 8, 2006, Mr.Shine, reported that:

> Mr. Saunders has demonstrated improvements in lumbar ROM and in strength as seen by LE manual muscle testing and tolerance to exercises. He has less complaint of pain and the frequency of "shocking pain" has decreased. He has mentioned the possibility of having epidural or facet injections performed which may benefit him. He may benefit from additional physical therapy especially if performed in conjunction with the epidural/facet injections.

11

R. 246.  On May 10, 2006, Dr. Woessner referred Saunders to Dr. Patrick Waring for a series of epidural injections.  R. 247.

d.      **Plaintiff's Appeal.**

Issue no. 1.    Whether the ALJ erred in failing to consider all relevant evidence?

Saunders contends that the ALJ failed to consider the October 8, 2004 lumbar spine MRI, because there is no reference to it in the ALJ's decision.  He urges that this omission affected the determination of his residual functional capacity and credibility.  He argues that the MRI provides the foundation for his complaints of pain.

Dr. Moss, who treated Saunders from September 20, 2004 until May 23, 2005, requested the October 8, 2004 MRI.  R. 163.  For the next seven months, Dr. Moss treated Saunders with an epidural injection, medication and physical therapy.  R. 201, 202, 234-40.  On April 4, 2005, Dr. Moss reported that Saunders could return to medium level activities with certain restrictions.  R. 223-24.  On May 23, 2005, Dr. Moss reiterated that Saunders was able to work modified duty with the restrictions listed in the April 15, 2005 FCE.  R. 221-22.  The ALJ reviewed the treatment provided by Dr. Moss, described the results of the FCE, and cited Dr. Moss' opinion that Saunders could return to work with modified duty restrictions as found in the FCE.  R. 22.  The ALJ gave great weight to Dr. Moss' assessment of Saunders' ability to work and noted that it was supported by the FCE conducted by the physical therapist, who also observed Saunders during ten weeks of therapy.  R. 23.

The Commissioner contends that the mere fact the ALJ did not mention the October 8, 2004 MRI during the discussion of Dr. Moss' treatment and opinion on Saunders' ability to return to work does not mean that the ALJ did not consider it.  The issue raised by Saunders is whether the ALJ is

required to discuss each diagnostic tool employed by a treating physician. Saunders argues that specific reference to the MRI was required by the provision in the regulations that the Commissioner will assess the residual functional "based on all relevant medical evidence. . . ." 20 C.F.R. §404.1545(a)(3). If Saunders' position is accepted, an ALJ must include reference to every diagnostic test employed by a treating physician. For example, Dr. Moss' report for January 7, 2005 reveals that Saunders was negative for Homan's test on the right and the left. R. 236. There is no mention by the ALJ of this test in his discussion of Saunders' treatment by Dr. Moss. When reviewing the treatment and opinions of a treating physician, it would be unreasonable to require the ALJ to discuss <u>each</u> diagnostic test employed by the physician. In this case the MRI was used by Dr. Moss to determine the course of treatment for Saunders, which resulted in the opinion that Saunders was able to work. The ALJ did not err by omitting reference to the October 8, 2004 MRI in his discussion of Saunders' treatment by Dr. Moss.

<u>Issue no. 2.</u>   Whether there was substantial evidence to support the ALJ's determination of Saunders' RFC or whether new and material evidence established that Saunders' impairments restricted him to sedentary work?

The ALJ's decision was dated January 26, 2006. R. 25. In July 2006, counsel for Saunders submitted notes on the treatment provided by Dr. Woessner, a family practitioner, including the referral to Dr. Voorhies, a neurosurgeon. R. 244-45. The Appeals Council considered this evidence. R. 5-6. Evidence considered by the Appeals Council is considered part of the record and should be considered on Saunders' appeal to this court. <u>Higginbotham v. Barnhart</u>, 405 F.3d 332, 337 (5th Cir. 2005).

Saunders contends that the records from Drs. Woessner and Voorhies demonstrate that he should have been restricted to sedentary duty. Saunders argues that, based on this additional

evidence, the ALJ's finding on his residual functional capacity is not supported by substantial evidence. Saunders ignores the fact that his treating orthopedic specialist, Dr. Moss, opined on April 4, 2005, that he could return to medium level activities with occasional lifting of thirty pounds. R. 223-24. Dr. Moss did not limit Saunders to sedentary activity.

Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Newton, 209 F.3d at 452. It may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 135. Dr. Moss' April 4, 2005 opinion is substantial evidence for the Commissioner's determination of Saunders' RFC. In contrast to Dr. Moss, an orthopedic specialist, Dr. Woessner is a family practitioner. R. 258. Dr. Voorhies, the neurosurgeon, opined that Saunders might be a candidate for surgery for the reasons cited, but "one more attempt to treat him nonoperatively would probably be the best course of action at this point." R. 252. Considering the reports of Dr. Moss, Dr. Woessner and Dr. Voorhies, there was substantial evidence to support the Commissioner's determination of Saunders' RFC.

Issue no. 3.    Whether there was substantial evidence to support the ALJ's finding on credibility?

The ALJ found that Saunders' impairments could reasonably be expected to produce his alleged symptoms, but his statements concerning the intensity, duration and limiting effects of the symptoms were not entirely credible. R. 23. The ALJ referred to the Social Security Ruling for the evaluation of symptoms in disability claims and assessing the credibility of a claimants. See SSR 96-7, 1996 WL 374186 (S.S.A.). The ALJ cited objective factors including Saunders' employment in the summer of 2005 until Katrina struck, the absence of a significant medication regime, the presence of a normal gait, and his ability to sit comfortably throughout the 45 minute hearing

without any signs of discomfort. R. 23. The ALJ also gave great weight to Dr. Moss' opinion and the physical therapist's FCE that Saunders was able to work. R. 23. There is substantial evidence to support the ALJ's finding on credibility.

<u>Issue no. 4.</u>    Whether the claim was properly before the ALJ?

Saunders contends that the medical evidence was not reviewed by a state agency medical consultant at the initial level. Instead, the medical evidence was reviewed by an employee of the Disability Determinations Service who was not a physician. R. 102. He argues that the ALJ was required to obtain an opinion from a state medical consultant.

The record demonstrates that on January 6, 2005, Diane Harris, a disability examiner, completed a physical residual functional capacity assessment. R. 95-102. On the same day Dr. Barnett completed a psychiatric review technique. R. 206-19. The Commissioner argues that if the ALJ erred in not requiring a state agency medical consultant to complete a physical RFC assessment, the error was harmless. In <u>Morris v. Bowen</u>, 864 F.2d 333, 336 (5th Cir. 1988), the Fifth Circuit looked to whether a procedural impropriety rendered the ALJ's determination unsupported by substantial evidence and determined that if a procedural impropriety did not produce such a result, there was no prejudice to the claimant's rights. For the reasons demonstrated above, there was substantial evidence to support the Commissioner's determination of Saunders' RFC and the ALJ's finding on credibility. Saunders was not prejudiced by the absence of a physical RFC assessment completed by a state agency medical consultant.

## **RECOMMENDATION**

Accordingly, IT IS RECOMMENDED that: (1) the Commissioner's cross-motion for summary judgment (Rec. doc. 10) be granted; and (2) Saunders' motion for summary judgment

(Rec. doc. 9) be denied.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 14th day of May, 2007.

  **SALLY SHUSHAN**
  **United States Magistrate Judge**